## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

-------------------------------------------------------------X

**DANIEL BRINK** *et al.*,

                              Plaintiffs,

-v-

                                         Case: 1:11-cv-01733 (EGS)

**XE HOLDING, LLC** *et al.*,

                              Defendants.

-------------------------------------------------------------X

### PLAINTIFF'S REPLY AND MEMORANDUM IN SUPPORT TO OPPOSITIONS OF DEFENDANTS OF THEIR MOTION FOR RECONSIDERATION, TO ALTER OR AMEND THE ORDER OF DISMISSAL

Plaintiffs file herewith their Reply Memorandum in Support of their Motion for

Reconsideration and to Alter or Amend the Judgment pursuant to Fed.R.Civ.P. 59(e) in order to

correct clear error of law and prevent manifest injustice, and Reply to the Oppositions of

Defendants as follows:

### ARGUMENT AND AUTHORITIES

I.      **PLAINTIFFS ARE SEEKING TO CORRECT A CLEAR ERROR AND A MANIFEST INJUSTICE AND NOT MERELY RESTATING ARGUMENTS BELOW**

    **A.  Hall II Does Not Control All Claims in the Case**

The parties agree on one thing at least: a motion for reconsideration is not a place to merely

reargue points previously raised and ruled upon.  Plaintiffs base the instant motion on the need to

correct a clear error or prevent manifest injustice.  The Court has ruled that *Hall II* stands for the

proposition that any and every act of wrongdoing that an insurance carrier or contractor commits,

so long as it happens while there is a valid and accepted claim for workers compensation benefits and the wrongdoing is related in some way to the receipt of benefits, the exclusive remedy and preemption prevent a party from any remedy or redress other than what might be in the DBA or LHWCA, and if it is not in there as a remedy to the injured party or their families or a third party – there is no cause of action.  The Court of Appeals' opinion is found in this language:

> Unsatisfied with the statutory *quid pro quo,* Hall contends that employees should be permitted to bring tort claims when the employer refuses to make timely compensation payments with an intent to injure. We could recognize such a cause of action, however, only by undoing the "legislated compromise between the interests of employees and the concerns of employers."*Johnson,* 462 U.S. at 931, 104 S.Ct. at 2831. Not only does the Act provide general immunity to employers from employee tort suits, 33 U.S.C. § 905(a) (1982), but it also provides a specific remedy for an employer's late payment of claims. *Id.* § 914(e), (f).
>
> In our view, the *Garrett* court was clearly correct in concluding that the sort of tort claims advanced here fall within the Act's exclusivity provisions. *See also Texas Employers Insurance Association v. Jackson,* 618 F.Supp. 1316, 1319-22 (E.D.Tex.1985). *But see Martin v. Travelers Insurance Co.,* 497 F.2d 329 (1st Cir.1974).

809 F.2d 924, 925 (1987).  The Court's decision was limited to determining the local law of the District of Columbia, while this decision concerns laws other than the local law since none of the Plaintiffs lived in the District and none of the Defendants reside in the district, though their acts had effects for personal jurisdiction purposes here.  The Court of Appeals in this case did go beyond DC local law and approached it with an "even if we were being asked to consider" kind of analysis – but they did not so hold in that case, and specifically recognized at the end of the opinion the possibility of claims under the *Martin v. Travelers* rubric when it is not concerned with failure to accept the obligation to pay benefits, but what happens when the carrier or employer sets in motion other kinds of harm through creation of reliance, and specifically sets up a scheme to harm the plaintiffs.  It is submitted the issues in this case cannot be so limited by *Hall* or for that matter others cases that make the same analysis such as *Atkinson.*

So for instance, this means, that if in the course of providing benefits an insurance carrier deliberately instructs a doctor to harm a patient, the injured party cannot sue the carrier for that but must complain to the Department of Labor.  This means that if an injured employee claims a workers compensation injury for an on the job injury in Iraq and the contractor locks him in a room and threatens him with criminal action, imprisons him falsely, and then causes the employee to lose his credit because he cannot work and cannot receive benefits, he is limited to the DBA and cannot sue for that.  It means if an employer deliberately prevents a person from getting any medical care and the person dies as a result some months later at home, the employee has no claim because the injury – death – did not occur on the job or as a result of a work related injury, but because of the delay in treatment caused by the employer's deliberate act.  It means, if the carrier deliberately seeks to destroy a wife's credit and she loses her house, since the husband worked and has a DBA claim, the wife (and perforce the husband) has no claim outside the DBA.  And since the DBA does not allow one to obtain any recovery for lost credit, or other consequential damages of the carrier's misconduct in providing money for legitimate and accepts medical bills – there is no redress for those deliberate wrongs.

The court has thrown all of plaintiffs' claims into the bucket marked bad faith for mishandling of claims.  In fact, most do not belong in that bucket.  And there are non-employees who have made claims such as Nicki Pool (Guardian Medical) who was driven out of business deliberately by CNA Insurance, and that claim has been made by Marcie Clark who was driven out of business and lost a great deal of money due to the deliberate refusal of CNA to pay bills they claimed to have either paid or told the Department of Labor they would pay but simply did not.  That is the claim of Daniel Brink whose wheelchair was repossessed from underneath him, and a motorized one purchased by CNA after that, and the check stopped payment, and CNA lied

about that to the department of Labor.  Mr. Brink was kicked out of his house, unable to work, walk or function, lost all of his property because of the carrier's refusal to pay bills they lied and said they had paid or would pay and never have after five years to this day.  None of these situations are ones in which the carrier denied benefits and refused to accept the claim in bad faith-.they all were accepted, but then they engaged in pure, malicious attempts to harm the Plaintiffs.

This is simply not what *Hall II* sought to address. It addresses garden variety bad faith claims of an employee who, seeking to avail themselves of the remedies of the Longshore Harbor Workers Compensation Act, are rebuffed and do not get their benefits.  The remedy for that is to win at the administrative level your benefits, obtain whatever penalties pertain, and interest for lost amounts the Act provides.

Nor is this an after the fact argument as asserted by the Defendants in their oppositions.  In fact, much of the hundreds of pages of briefing before the Court rendered its decision was directed at explaining why *Hall* or *Hall II, Atkinson¸* and other cases did not apply here and why the exceptions did exist, how the SAC was describing injuries and acts beyond the LHWCA and DBA.  It is true, Plaintiffs did not spend time focusing on *Hall* but the reason for this was that the substantive law of the District of Columbia is not controlling regarding the actions in other Circuits represented by the dozens of claims here.  Simply because Plaintiffs did not look at *Hall* in detail did not mean all of Plaintiffs briefing was an argument against that sort of application to these facts.

That is <u>not</u> the gravamen of the Second Amended Complaint (SAC) and it is a manifest injustice to try to lump all of the claims of Plaintiffs into that category of *Hall II* types of complaints outside of the DBA/LHWCA exclusive remedy provisions.  What is at stake here is

4

an interpretation that the Court could not possibly have intended, to sanction the "very serious" misconduct as the Court called what is described in the SAC as something the Courts must shrug at because its hands are tied by the Exclusive Remedy Doctrine.

First, as the Court notes in the Memorandum of Opinion, there are numerous courts who, unlike cases surrounding the Service Contract Act or ERISA, have stated that there are circumstances where the claims being brought are not "on account of the injury or death" which circumscribes the exclusive remedy provision of the LHWCA, but rather on a whole separate set of deliberate, malicious acts by the contractor or carrier that result in completely new or separate injuries, harms, and consequential loss nowhere accounted for in the DBA or LHWCA.

## B. Atkinson, Hall and other authorities Implicitly recognize Viable Claims Under these Facts

The Court also misses the rights of Plaintiffs whose injuries arose in, or the Defendants' deliberate harm occurred in, jurisdictions that do recognize viable causes of action outside the LHWCA when the acts (1) are not the original acts giving rise to the DBA covered injury, (2) are done deliberately or maliciously, or (3) done or with knowledge that the Plaintiff's reliance caused a shift in their circumstances that to stop payment or otherwise commit acts that result in a specific economic harm apart from the original circumstances of the workers compensation injury.  Those cases from Florida, Illinois, New York, California, Texas, Virginia, Massachusetts, North Carolina, South Carolina, Montana, Oregon, Maryland, and the Federal Circuits that apply to those places – and more – support a view that is more inclusive of the claims that a mere *Hall II* analysis permits.

So too Plaintiffs' pointing out the error of the Court factually that none of the claims in this case involved the Martin/Atkinson types of scenarios that in those cases would have justified any way around the Exclusive Remedy of the LHWCA or DBA applying the LHWCA is important

to correcting clear error and a manifest injustice.  The Court appeared to rule that if the facts did

justify that, it might dictate another result especially were the Court be required to apply the

substantive law of the place of the harm and/or the place of the wrong in question.  And therefore

Plaintiffs are justified in pointing out to the Court just those facts obtain in this case, as Plaintiffs

did in the Memorandum in Support of the Motion for Reconsideration.

The Defendants in their Oppositions to this motion conflate cases where there would be a

cause of action outside the LHWCA in a court of law with the obvious exclusivity and

preemptive effect of any actions for withheld or delayed compensation as outlined in *Hall II* and

*Atkinson* and other cases that point out that Section 14 and 28 of the LHWCA specifically

address the right of companies and their carriers to controvert claims and of Claimants to bring

proceedings before the Department of Labor for having their benefits instituted or reinstated, and

in certain cases, with penalties and interest.  But this case represents the exception to the well-

worn rule. The Court indicated in the Mem. & Opp. at p. 23 that section 31(c) of the LHWCA

provides remedies and proceedings for additional injury, physical, psychological or economic

caused by deliberate and fraudulent conduct.  It provides no such relief or administrative

proceedings and remedy for such conduct.  Section 14(e) and (f) does not apply to fraud.  It

covers applies regardless of whether the employer's delay is in good faith or unintentional, and

subsection (e) does not apply if an employer/carrier files a simple form LS 207 called a Notice of

Controversion of the worker's or survivor's right to benefits even if the grounds are knowingly

baseless.  Neither subsection has anything to do with fraud or bad faith.  Bad-faith insurance

practices and mail and wire fraud are more than "non-compliance with the DBA."  The Act

simply does not deal with fraud.

Plaintiffs' claims, and we would urge the majority of the claims, or for situations in which the Defendants admit the benefits are owing, claim to be paying the benefits, but seek to fraudulently and intentionally devise ways to harm the Plaintiffs and their care providers or managers, by inducing them to incur the charges with written approval, then pulling the financial rug out from underneath them and third parties, causing massive financial harm and consequential loss of the ability to obtain care, causing further injuries not the original injuries claimed under the workers compensation scheme.

0nder the actual facts of the SAC rather than the cramped view Defendants have advanced, it would lead to an absurdity, for Defendants could, in the name of limiting claimants to the proceedings before the Department of Labor, commit deliberate acts of physical harm in the course of administering workers compensation benefits – or at least giving a thin appearance of doing so – and then claim the Claimant has to go to the department for relief when the Act provides no relief for acts such as adjusters driving their cars over Claimant's wives, or dogs, or sending poisoned medication by mail to the Claimants, or defaming the Claimant's children at their schools in the name of trying to locate them for home health care, or other absurdities, which no person would argue would be within the exclusive remedy.

The question is not whether there are exceptions – for there are – to the requirement that a party go before the Department of Labor alone in any dispute with the employer or carrier following a work related injury and disability.  We know the LHWCA or DBA address nothing about wages under the contract, breach of the contract for wages or benefits, or bonuses, or Tittle VII or ADA, or a host of other causes of action that would have a cross over with the employment relationship once the party is injured in certain circumstances such as a sexual

assault on the job or third party liability (such as we have, for example, with Plaintiff Holguin-

Luge  and her suit against KBR and Khudairi Trading Group).

As the Court held in *Atkinson v. Gates, McDonald & Co.,* 838 F.2d 808  (5th Cir.1988):

Atkinson contends that the exclusivity rationale is defective because it inevitably leads to the conclusion that there could be no common-law tort claim against an insurance company if, for example, its employee, in the course of investigating the plaintiff's claim for LHWCA compensation benefits, were to illegally enter plaintiff's residence to get needed evidence. Atkinson cites her own passage from Larson, supra, in support of this argument. But the obvious difference between the examples posed by Atkinson and Larson (see note 7, supra ) in this connection, and the case of bad faith refusal to pay compensation benefits, is that in the former class of case plaintiff's entitlement to recover in the tort action is in no way dependent on his having been entitled to compensation benefits or to the defendant's having violated the compensation statute.

*Id.*  at 813-14.  In footnote 7, it gets to the nub of the matter:

"But must we go on to say that the carrier acquires complete tort immunity ever after for anything its agents do to carry out their investigation? Suppose the agent had decided to burglarize the claimant's house to get needed evidence. Suppose claimant died of fright on seeing the burglar. Is the compensation act the exclusive remedy, merely because the activity involved, which was the collecting of evidence, was in the mainstream of the agent's duties?

"Again, suppose a claimant has a compensable broken toe, and is being tailed by a photographer. Claimant sees him in the bushes, a scuffle ensues, and claimant receives a skull fracture as a result of a blow from the camera. Is this skull fracture nothing but an aggravation of the broken toe?" Larson, supra, Sec. 68.34(b) at 13-123-124.

*Id.* fn. 7.

That is the distinction in this case, for the majority of acts and damages asserted in the

SAC is "in no way dependent on [Plaintiffs] having been entitled to compensation benefits or to

the defendant's having violated the compensation statute."  That is, the DBA/LHWCA provide

for no remedy or penalty or even hearing for things like stop payment checks, consequential

economic loss to accepting benefits, making like they are approved, informing Department of

Labor and the Claimants they are approved, giving the green light to the medical personnel to set

up the appointments, incur the debts, incur the expenses, assuring all involved they have been

Case 1:11-cv-01733-EGS   Document 157   Filed 02/11/13   Page 9 of 17

paid, but committing outright fraud and a scheme to defraud that lands Plaintiffs and countless others in financial hot water, loss of credit, repossession of property, homes, and destruction of family life and marriages.  How would this be different from the distinctions in *Atkinson* above or in *Martin* **and other progeny that recognize in unique circumstances there is no remedy intended or provided for by the LHWCA** and it would not contravene federal preemption or exclusivity to permit a cause of action in those extreme circumstances? *See also* In *Sample v. Johnson,* 771 F.2d 1335, 1347 (9th Cir. 1985) (*Martin* valid but limited compensation to cases "where a carrier *deliberately stops payments already made*, when it should have known that *acute harm* might follow.").

That is what this case is about, not about seeking a remedy outside of the DBA and LHWCA when such is provided for, not in seeking damages for mere bad faith in refusing claims or payment of benefits, or even withholding payment once begun, but rather in the creation of an elaborate and destructive intentional scheme to defraud in violation of the covenant of good faith and fair dealing, in violation of fraud causes of action, in violation of consumer protection laws in other states, inflicting, as in the *Ross v. DynCorp* case, intentional infliction of mental and emotional distress.

*Hall II* and *Atkinson* both stand for the proposition that when the plaintiff's cause of action depends on entitlement to benefits, it would circumvent the LHWCA exclusive remedy and preemption to allow a tort claim to get those benefits.   The claims described in this Motion for Reconsideration – though not including all claims in the case – do not depend on a right to workers compensation benefits.  Even if there were no right to benefits, when a contractor or carrier reaches out to a person and their family to cause harm, sets in motion reliance, creates obligations within medical providers, and then withdraws the means to complete what they have

set in motion – not in the interest of controverting the right to benefits, because those are conceded by the defendants – they must pay for the consequential loss their acts create that are outside of rights conferred in the LHWCA.

## II.    DEFENDANTS MISREAD THE EXCLUSIVITY PROVISION OF THE DBA AS STRICTER ON THE EXCLUSIVE REMEDY PROVISION OF LHWCA REGARDING STATE LAW TORTS

Defendants in their Opposition have stated that the language of the DBA's exclusive remedy provision "shall be in place of all other liability,"[1] 42 U.S.C. § 1651(c), is meant to apply to all state tort law provisions and thus is more all-encompassing than the exclusive remedy language of the LHWCA, in place of all liability "on account of such injury."

This is an incorrect reading of the plain language of the statute and of the case law.  As Plaintiffs point out, this is a clear error of law that may have influenced the Court's decision to exclude even those claims in this case that are not "on account of such injury," but certainly might be covered if the DBA's broader language of "and in place of all other liability."  The problem is, in place of all other liability does not modify "such injury" but instead refers to the phrase, "under the workers compensation" statute of a state.  The Court relies on a misinterpretation of this provision.  *Mem. Opp.*  at 23.

In *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715 (100 S.Ct. 2432, 65 L.Ed.2d 458) (1980), the Supreme Court held that one may bring a state workers compensation claim at the same time as one brings a Longshore workers compensation claim, and the exclusive remedy provision of LHWCA, § 5(a) did not bar that.  But the DBA provides a further gloss on this exclusivity provision by going one step further to bar any action under state workers compensation acts.

The Defendants in their Reply briefs on the Motions to Dismiss made much of this provision of the DBA creating broader exclusivity and preemptive effect as a basis for

dismissing the serious claims and devastating damages of Plaintiffs in the SAC. Therefore, Plaintiffs are justified in bringing this up in a Motion for Reconsideration to correct errors of Defendants in their Reply briefs which the Court took up in its decision; irrespective of whether or how Plaintiffs brought this up in their initial responses to the Motions to Dismiss, this is a clear error of law that affected the outcome of the case. Plaintiffs assuredly argued against such a reading of Section 1651(c).[1]

The court's opinion needs to be amended to correct that error and any adverse ruling to Plaintiffs as a result of that misconstruction of the exclusive remedy provision of the DBA. It is arguably broader in wording than LHWCA exclusive remedy provision and thus could have resulted in a more onerous application to Plaintiffs than intended by the law.

Defendants next conclude that case law has established that the meaning of the DBA is that it has a broader prohibition of state tort claims than does the LHWCA. They cite *Fisher v. Halliburton*, 667 F.3d 602 (5th Cir.), *cert. denied*, 133 S.Ct. 427 (2012) for that proposition. It is true that *Fisher* cites to the DBA's section 1651(c) exclusive remedy provision when discussing the exclusive remedy doctrine that applies in the case. What *Fisher* does not do is state that this section is broader in its exclusion of state law torts "on account of the injury or death" than is section 5(a) of the LHWCA, nor that the exclusive remedy doctrine under the DBA is somehow more expansive regarding state law torts than is the Longshore Act – except only insofar as the DBA excludes state workers compensation remedies in addition to the Longshore's exclusion of state law torts when the tort is "on account of the injury" suffered by the worker that is covered under LHWCA.

---

[1] See, e.g., Plaintiffs' Memorandum in Opposition to Insurer's Combined Motion to Dismiss, at p. 10, in which Plaintiffs expressly argue against any broader interpretation of the DBA's exclusivity provision in 42 U.S.C. § 1651(c), instead arguing as we did in the Motion for Reconsideration that the limitation is on any causes of action that are "on account of the injury" that gave rise to the workers compensation claim under the LHWCA.

But Defendants – and it appears the Court – read the DBA as being more expansive in the sense that its exclusive remedy provision alone controlled and that we look to it in determining how to view whether under the DBA – not the LHWCA case law – one may bring a claim against the employer or carrier for post-injury torts committed by employer or carrier.  It stretches the language of *Fisher* to suggest that it expands the exclusive remedy doctrine beyond what is intended in the LHWCA except to add state workers compensation claims.

The Fifth Circuit in *Fisher* began its analysis of the cases that were exceptions to exclusive remedy of the LHWCA in determining whether the plaintiffs could recover against the employer, KBR/Halliburton, for knowingly subjecting truck drivers to risk of death on certain routes that they had advance notice would be extremely dangerous.  It stated:

> It is a recurring theme in workers' compensation law that injuries arising from an employer's intentional tort do not fall within the scope of coverage for compensation purposes. A number of courts have held in the LHWCA context, for example, that an employee can sue his employer if the employer committed an intentional tort. This circuit has not yet expressly recognized this intentional tort "exception" to coverage under the LHWCA, but the cases so holding typically reason that an injury occurring as a result of an employer's intentional act is not "accidental" for purposes of the LHWCA's "accidental injury" definition of injury. It has also been said that such an injury is not the result of a third party's willful act because employers are not third parties under the LHWCA. Importantly, the cases take a very narrow view of the types of intentional injury that lie outside of the LHWCA— the cases consistently require that the employer have had **a specific intent or desire that the injury occur**.
>     The facts of this case do not fit the mold of the type of intentional tort that some courts heretofore have recognized as an exception to coverage under the LHWCA. Plaintiffs have not challenged the district court's determination below that there is no evidence in the record "support[ing] the proposition that [KBR] desired that any of the drivers be injured or killed in an attack by Iraqi insurgents." Accordingly, this case does not require us to determine whether the DBA includes within its scope injuries caused by an employer's intentional assault of an employee with the specific desire to injure the employee.

667 F.3d at 617-18 (emphasis added, footnotes omitted).

In the footnotes to the above, the Court specifically cites to two District of Columbia cases that found exceptions to the exclusive remedy when there was a specific intent to cause

harm to an employee, and thus there was no accidental injury arising out of the employment.   It cited these cases:

> *Houston v. Bechtel Assocs. Prof'l Corp.* 522 F.Supp 1094, 1096 (D.D.C. 1981) (observing "[t]he courts have … carved out an exception to exclusive liability provisions where the injury inflicted is the result of an intentional act"); *Austin v. Johns-Manville Sales Corp.*, 508 F.Supp. 313, 316 (D. Me. 1981) ("Nothing short of a specific intent to injure the employee falls outside the scope of the [LHWCA]."); *Rustin v. District of Columbia*, 491 A.2d 496, 501 (D.C. 1985) (observing that the LHWCA's exclusivity provision "does not reach actions where the employer specifically intended to injure the employee.").

*Id*. at 618 fn. 57.   The Court then goes onto quote the exclusivity provision of the DBA and also in a footnote says, "See also 33 U.S.C. § 905(a), which provides...."   It cites the language of the exclusivity provision of the LHWCA.  *Id.* at 619 fn. 65.   What the Court in *Fisher* does not say is that the exclusivity provision of 1651 under the DBA is identical to the LHWCA and thus obviates the need to look to the LHWCA for purposes of the exclusivity provision in a DBA case, or that the DBA's exclusivity provision is anything more than an overlay to the LHWCA, extending it to cover state workers compensation and not acting as an independent basis for interpreting the exclusive remedy doctrine  more broadly as to state tort claims that are found to be intentional and the harm specifically intended by the actor.

State workers compensation boards also recognize that the DBA only is an over lay on the provisions of the LHWCA, and excludes state workers compensation provisions.  For example, in a Massachusetts Workers Compensation Board case,  *Daniel Thompson v. Raytheon Corp., Employer/Self-insured*, No. 007254-08 (Sept. 22,  2011) (citing *Zangao v. M.B. Seafood, Inc.*, 16 Mass. Workers' Comp. Rep. 64, 70 (2002) ("Because the DBA is a "law[] of the United States" that not only provides for compensation for the claimant's injuries but also expressly excludes any recovery under our State's workers' compensation law, the claimant cannot be deemed to be an "employee" as contemplated by G. L. c. 152.").

### III.   DEFENDANTS SIMPLY DO NOT ADDRESS THE AREAS THAT ARE IN THE SAC THAT WERE NOT ADDRESSED IN THE COURT'S ORDER

In response to the arguments advanced by Plaintiffs in the Motion for Reconsideration, the Defendants simply assert that the Court fully considered all of the claims and the persons making those claims in dismissing them as all falling under the exclusive remedy and preemption doctrines.  They do not address the specific arguments of Plaintiffs concerning non-DBA claims such as those brought by those who relied detrimentally on payments such as third party providers, spouses, the claims for breach of contract (detrimental reliance and covenant of good faith and fair dealing), the claims of Nicky Pool a nurse case manager who was bankrupted and blackballed from working in her field due to Defendants' fraud and breach of agreements, sexual assault of third parties (not the employer) against individuals who are then suing that third party, not the employer (Luge suing Khudairi Trading company), suit for fraud and detrimental reliance on medical insurance delaying treatment and resulting in death (Swart), suit for intentional infliction and fraud by Marcie Clark for herself and her minor child for misconduct directed at them, not the defense contractor employee, Merlin Clark.

The Court did not address claims of these individuals and neither do Defendants except to make sweeping generalizations that they were covered in the Court's order.  But Plaintiffs are saying these claims and those who asserted them should not be lumped in with an employee whose injury results in benefits being paid and those benefits are withdrawn. The claims of these third parties who were not employed, who never claimed or could claim under the DBA, should be addressed on their own.  If they court is saying the exclusive remedy provision also excludes claims by persons other than employees who were injured in the course and scope of their employment – then that specific finding should be made.

14

**IV.  DEFENDANTS DID NOT ADDRESS THE SPECIFIC ARGUMENTS JUSTIFYING RECONSIDERATION ON THE DISCRIMINATION AND RETALIATORY DISCHARGE CLAIMS**

Plaintiffs were retaliated against in violation of public policy – namely, the policy of the DBA that states that persons may not be discriminated against by firing them if they can otherwise perform their jobs.  Some of the Plaintiffs fall in that category and some do not.  Some could no longer perform their jobs, but were retaliated against not just by being fired, but by being denied health insurance, and being locked up against their will, and mistreated in many ways.  Bringing claims for wrongful or retaliatory discharge outside of the scope of LHWCA exclusive remedy provisions is not barred. § 948 provides a nominal remedy for employees who are wrongfully terminated, thus numerous courts have tolerated employee claims against the employer on such matters. Defendants simply do not address these arguments nor the case law that supports what Plaintiffs are saying in their motion for reconsideration.

**V.  DEFENDANTS INCORRECTLY ASSUME THE ADA CLAIMS WERE DISMISSED WITH PREJUDICE**

The Defendants do not address the problem that forms the basis for Plaintiffs' Motion to Alter or Amend the Judgment on the ADA claims.  The Court did not indicate whether Plaintiffs could amend to correctly plead what was already present in the factual sections pertaining to the three plaintiffs who have ADA claims based on right to sue letters.

The Court has jurisdiction over these ADA claims, but dismissed for failure to properly plead.  Normally that is susceptible to amendment and repleading to correct the technical defect. Plaintiff did request in each response to be allowed to amend, and has also filed a Motion to Amend the SAC to restate the count on ADA since the claims fit within the facts of specific firing on account of the disability that affects major life conditions, and for failure to reasonably

accommodate the Plaintiffs by refusing to continue the accommodation that was provided by Ronco in the case of Merlin Clark, and continuing to keep them on the rolls as employees as requested by Kreesha and Alsaleh as GLS had been doing and answering their requests for translation work in the U.S.

Defendants simply brush off these realities and say that the Plaintiffs could not properly replead because the facts do not support it, which is completely untrue.  This is elevation of form over substance to suggest that the Plaintiffs could not replead and satisfy the elements of an ADA claim.

## VI.  DEFENDANTS DO NOT PROPERLY ADDRESS PLAINTIFFS' MOTION REGARDING BREACH OF COVENANT OF GOOD FAITH AND DETRIMENTAL RELIANCE

Defendants simply state the Court properly dismissed these claims but do not address the lengthy description in the SAC of Plaintiffs stating claims for breach of the covenant of good faith and fair dealing as well as articulating claims for detrimental reliance.

## VII.  RICO IS NOT PREEMPTED BY THE DBA

Defendants fail to address the many cases that were cited by Plaintiffs showing that  the LHWCA is not preemptive of all other remedies, even in the Court's view of the exclusive remedy and preemption doctrines, when such remedies have no bearing on the operation of the DBA.  They also argue that the Court held that the RICO claims are not properly plead and fail to state a claim for relief.  This is not how Plaintiffs read the Mem. & Opp.  There is a footnote that briefly calls into question whether there is a proper showing of a RICO enterprise, but Plaintiff believes that has been shown throughout the SAC.   Defendants also question whether there is any property right under RICO in the benefits under the DBA.  This Plaintiff showed and that has not been contradicted.

16

## **CONCLUSION**

For all of the foregoing reasons and those stated in the original moving papers, and in the interests of justice, Plaintiffs request that the Court reconsider its Memorandum and Decision in the particulars stated above, and alter or amend its judgment and grant leave of Plaintiffs to refile an Amendment to correct the defects in pleading the ADA claim.

Dated: __11 February 2013__        Respectfully submitted,

                                __/s/ Scott J. Bloch_____
                                Scott J. Bloch, Esq.
                                DC Bar No.  984264
                                LAW OFFICES OF SCOTT J. BLOCH, PA
                                1050 17th St., N.W., Suite 600
                                Washington, DC  20036
                                Tel.  (202) 496-1290
                                Fax (202) 478-0479
                                scott@scottblochlaw.com

                                William J. Skepnek, Esq.
                                 Admitted pro hac vice
                                THE SKEPNEK LAW FIRM
                                1 Westwood Road
                                Lawrence, KS     66044
                                Telephone: (785) 856-3100
                                 Fax: (785) 856-3099
                                bskepnek@skepneklaw.com

                                *Counsel for Plaintiffs Daniel Brink et al.*

Of Counsel:
Joshua Gillelan, III
Longshore Claimants' National Law Center
Georgetown Place, Suite 500
1101 30th Street, N.W.
Washington, DC 20007
(202) 625-8331
Fax: (202) 787-1920